NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Metropolitan Property and Casualty Insurance Company, a New York Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Pauline Gilson, as Surviving Spouse and Personal Representative for the Estate of Robert Gilson; John C. Bitow and Nancy Bitow, as surviving parents of Joel Bitow, and on behalf of Tamira Bitow, Bret Bitow and Neil Bitow, their surviving children,<br><br>    Defendants. | No. CV-09-01874-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Metropolitan Property and Casualty Insurance Company's ("Metropolitan") Motion for Summary Judgment. (Dkt. #27.) For the following reasons, the Court grants the Motion.

**BACKGROUND**

Metropolitan issued a homeowners insurance policy to Pauline and Robert Gilson, effective from February 15, 2006 to February 15, 2007, for a home located in New Hampshire. (Dkt. #28 at ¶ 7, Ex. 4.) The policy includes a general coverage provision for personal liability that reads:

> **Agreement. We** will pay all sums for **bodily injury** and **property damage** to others for which the law holds **you** responsible because of an **occurrence** to which this coverage applies. This includes prejudgment interest awarded

against **you.**

**We** will defend **you**, at **our** expense with counsel of **our** choice against any suit seeking these damages. **We** may investigate, negotiate, or settle any suit. **We** are not obligated to defend against any claim or suit seeking damages not covered under this policy.

The policy also contains the following exclusion ("the exclusion") with regards to aircraft related accidents:

> **Aircraft**. **We** do not cover **bodily injury** or **property damage** arising out of:
>
> A. the ownership, maintenance, occupancy, operation, use, or loading or unloading of an aircraft owned or operated by or rented or loaned to **you**;

On November 1, 2006, Mr. Gilson and Joel Bitow were killed in a flying accident involving an ultra light vehicle—a kite wing Tanarg 912 recreational vehicle. (Dkt. #28 Ex. 1 at ¶ 1.) Following the accident, the Bitow estate sued Mrs. Gilson for wrongful death ("the Bitow case"). (*Id.*) Metropolitan has temporarily agreed to defend Mrs. Gilson in the Bitow case with the reservation to deny representation if the Bitow's claim is determined to be one that is not covered under the policy. (Dkt. # 32 Ex. C.) Metropolitan is now seeking a declaratory judgment that the Bitow's claim is not covered under the policy and that Metropolitan has no duty to indemnify or defend Mrs. Gilson.

## DISCUSSION

**Summary Judgment**

### I. Legal Standard

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such

1 | that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty
2 | Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Choice of Law

Because this is a diversity case, this Court applies Arizona's choice-of-law rules. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003). In determining which state's law to apply, Arizona has adopted the "most significant relationship" test set forth in Section 193 of the Restatement (Second) of Conflict of Laws (1971) ("Restatement"). *See Bates v. Super. Ct.*, 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988); *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 516–17, 990 P.2d 1069, 1075–76 (Ct. App. 1999); *Beckler v. State Farm Mut. Auto. Ins. Co.*, 195 Ariz. 282, 286, 987 P.2d 768, 772 (Ct. App. 1999). That test states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship . . . .

Restatement §193.

### A. This Court Must Apply New Hampshire Law

Prior to engaging in a choice of law analysis, however, it must be clear that a conflict of law exists. Under New Hampshire law, determining whether to impose a duty to defend turns on "whether the cause of action against the insured alleges sufficient facts in the *pleadings* to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit." *U.S. Fid. & Guar. Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–152, 461 A.2d 85, 87 (1983) (emphasis added). Under Arizona law, a determination as to whether a duty to defend exists "should focus on the facts rather than solely upon the allegations of the complaint." *U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co., Inc.*, 163 Ariz. 476, 480, 788 P.2d 1227, 1231 (Ct. App. 1989). Thus, New Hampshire, in determining whether a coverage obligation exists, looks only at the pleadings; Arizona does not. Accordingly, in this case, the laws of the two states materially conflict.

Because a conflict exists, the Court applies Section 193 of the Restatement to determine which law is appropriate. The Gilson's insurance policy describes the insured property as a home located in New Hampshire. (Dkt. #28 Ex. 4.) Therefore, the "principal location of the insured risk during the term of the policy" is New Hampshire, and New Hampshire substantive law applies.[1] *See Beckler*, 195 Ariz. at 290, 987 P.2d at 776 (holding that although a car was insured in Nebraska, Arizona was the "principal location" because that is where the car was kept for the majority of the policy's duration).

### III. Based on New Hampshire Law, Summary Judgment is Appropriate

Metropolitan asserts that, while the policy generally covers personal injury, the facts alleged in the Bitow claim fall within an explicit exclusion in the policy. Under New Hampshire law, when determining whether a duty to defend is invoked, "it is the complaint that controls." *Great Lakes Container Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 727 F.2d 30, 34 (1st Cir. 1984); *Broom v. Cont'l Cas. Co.*, 152 N.H. 749, 753, 887 A.2d 1128, 1131 (2005) (holding that "[i]t is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy"). However, "[w]hen the alleged facts do not clearly preclude an insurer's liability, inquiry may proceed into underlying facts." *M. Mooney Corp. v. U.S. Fid. & Guar. Co.*, 136 N.H. 463, 469, 618 A.2d 793, 797 (1992); *see also Webster v. Acadia Ins. Co.*, 156 N.H. 317, 319, 934 A.2d 567, 570 (2007) (holding that "[i]n case of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor").

The relevant portion of the exclusion states that Metropolitan does not cover "bodily injury . . . arising out of: the operation . . . of an aircraft . . . operated by . . . you." (Dkt. #28.)

---

[1] Defendants contend that there is no difference between the substantive laws of New Hampshire and Arizona. Defendants, however, have provided no argument in favor of applying Arizona law. Accordingly, this Court will apply substantive New Hampshire law.

- 4 -

The parties raise several disputes regarding the language of the exclusion: (1) whether the Tanarg 912 is an "aircraft," (2) whether Mr. Gilson was "operating" the aircraft, and (3) whether Mr. Gilson's death "arose out of" the operation of an aircraft.

First, the Tanarg 912 is an "aircraft" for purposes of the exclusion. New Hampshire law indicates that "where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning." *Nicolaou v. Vt. Mut. Ins. Co.*, 155 N.H. 724, 728, 931 A.2d 1265, 1268 (N.H. 2007) (citing a dictionary definition to derive the "natural and ordinary" meaning of an insurance policy term). When confronted with an ambiguous term in an insurance policy, however, the reviewing court should interpret the term "in context and as would a reasonable person in the position of the insured." *Panciocco v. Lawyers Title Ins. Corp.*, 147 N.H. 610, 613, 794 A.2d 810, 813 (2002). Under New Hampshire law, the "interpretation of the language of an insurance policy is ultimately a question of law" for the court to decide. *Id.* at 613, 794 A.2d at 813.

The term "aircraft" is unambiguous as it appears in the exclusion. The "natural and ordinary" meaning of "aircraft," as defined by Merriam-Webster's Collegiate Dictionary, is "a vehicle (as an airplane or balloon) for traveling through the air." Under this definition, because the Tanarg 912's primary purpose is traveling through the air, it falls under the term "aircraft." Similarly, even if the term "aircraft" was ambiguous, the Tanarg 912 still would fall within the scope of the exclusion. A reasonable person would conclude that a motorized vehicle capable of sustained flight is an "aircraft" and thus subject to the exclusion. Defendants' reliance on technical publications and regulations to define "aircraft" is without merit. Whether or not the insurance term is ambiguous, no New Hampshire decision relies on technical publications to guide its definition of a term in an insurance policy. Rather, the courts look to the "natural and ordinary meaning," not to technical classifications. *Nicolaou*, 155 N.H. at 728, 931 A.2d at 1268. Additionally, the cases cited by Defendants are inapposite because they do not hold that motorized vehicles capable of atmospheric flight are not "aircraft." Accordingly, under either test set out by the New Hampshire courts, the Tanarg 912 is an "aircraft" for the purposes of the exclusion.

Next, the Complaint alleges that Mr. Gilson was "operating" the aircraft prior to the accident. It states, "On November 1, 2006, Joel Bitow and Robert Gilson were killed when an aircraft Joel Bitow was flying, as an instructor, and in which Robert Gilson was *co-piloting*, as a student, crashed in Arizona." (Dkt. # 28 Ex. 1 at ¶ 1) (emphasis added). The complaint further alleges that "there are no such things as 'passengers' on two-seat ultra light aircraft; there are instructors and students; and the interaction between the two of them, in flight, is essential to the aircraft staying aloft" because both co-pilots must control their weight balance together to operate the aircraft. (*Id.* at ¶ 6.) Even if Mr. Gilson was only a student pilot, engaging in "flight training," the complaint clearly alleges that he still exercised force and influence on the aircraft that was necessary to make it fly properly. *See First Specialty Ins. Corp. v. Am. Home Assurance Co.*, 558 F.3d 97, 103 (1st Cir. 2009) (citing the Oxford English Dictionary and finding that "operated by" means to "'exercise force or influence, produce an effect, act, work,' '[t]o bring force or influence to bear on or upon,' 'to effect or produce by action or the exertion of force or influence; to bring about, accomplish, work.'"). According to the complaint, it was Mr. Gilson's failure to properly complete his part of operating the aircraft that resulted in his death. These uncontroverted[2] allegations constitute the "operation" of an aircraft as provided by the exclusion. *See Great Lakes Container Corp.,* 727 F.2d at 34 (holding that courts should only look to the facts in the pleadings to determine whether a duty to defend is invoked); *Broom,* 152 N.H. at 753, 887 A.2d at 1131 (same).

The deposition testimony of Ivan Brauer in this case does not raise an issue of fact. Although he testified that "only one person in the aircraft is a pilot in command, and the other person is automatically the passenger," there is nothing in this deposition to indicate that Mr. Brauer has experience with the Tanarg 912 aircraft. (Dkt. #32.) In fact, Mr. Brauer flatly stated, "I've never been in a Tanarg in my life, so *I don't know anything about a*

---

[2] Defendants have not provided a copy of the Answer as filed in the Superior Court. Accordingly, this Court may only consider the Complaint provided by Metropolitan in determining whether there is a duty to defend.

1 *Tanarg*." (Dkt. #32-5 Ex. G) (emphasis added). At any rate, it is the allegations of the
2 complaint and not Mr. Brauer's testimony that controls. Similarly, Defendants rely on the
3 affidavit of Mrs. Gilson in which she states that Mr. Gilson "had no interest in piloting" or
4 "learning how to fly or operate" an ultra light vehicle. (Dkt. #32-1 at ¶ 4.) While Mrs. Gilson
5 asserts that Mr. Gilson did not want to learn to operate an aircraft, this has little bearing on
6 how the complaint alleges that the flight operation actually occurred on board the Tanarg
7 912.

8   Finally, Mr. Gilson's death "arose out of" his operation of the aircraft because the
9 injuries occurred as a result of an aircraft crash. An injury arises out of an excluded activity
10 if there is a connection between the injury and the activity that is "more than tenuous."
11 *Philbrick v. Liberty Mut. Fire Ins. Co.*, 156 N.H. 389, 391, 934 A.2d 582, 584 (2007).
12 Defendants assert that in the underlying complaint, the Bitows allege that it was Mr. Gilson's
13 negligent failure to disclose medical conditions that caused the fatal accident. (Dkt. # 32.)
14 Mr. Gilson's alleged negligence, however, is relevant only to the extent that it caused the
15 aircraft to crash. *See Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1045 (9th Cir. 1985)
16 (interpreting an aircraft exclusion and holding that an insurance policy did not cover a claim
17 for negligent entrustment of a plane because, "[r]ecovery must depend on the ownership or
18 the use of the excluded vehicle"); *Safeco Ins. Co. of Am. v. Husker Aviation, Inc.*, 211 Neb.
19 21, 24, 317 N.W.2d 745, 748 (Neb. 1982) (holding that "[w]hatever else may have been a
20 cause of the decedent's ultimate death, it is clear from the record here that if he had not been
21 operating the aircraft at the time it crashed, he would not have been killed"); *Aridas ex rel*
22 *Estate of Inman v. Royal Ins. Co. of Am.*, 462 F.Supp.2d 76, 77 (D. Me. 2006) (finding no
23 coverage under an insurance policy with an aircraft exclusion because "[w]hatever may have
24 been the insureds' responsibility for circumstances that led up to that crash, the damages
25 undeniably arise out of the use of an aircraft"). Further, Defendants provide no legal basis
26 for finding that, under these facts, Mr. Gilson's death "arose out of" his failure to disclose
27 his medical conditions. Accordingly, this Court finds that Mr. Gilson's death "arose out of"
28 his "operation" of an "aircraft" as provided by the exclusion.

The language of the policy states that, "[Metropolitan] [is] not obligated to defend against any claim or suit seeking damages not covered under this policy." Because Mr. Gilson's death falls within the aircraft exclusion, Metropolitan has no duty to defend Mrs. Gilson in the Bitow case.

**IT IS THEREFORE ORDERED** that Metropolitan's Motion for Summary Judgment (Dkt. # 27) is **GRANTED**.

DATED this 7th day of July, 2010.

*/s/ H. Murray Snow*
G. Murray Snow
United States District Judge